UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LONGVIEW FIBRE PAPER AND
PACKAGING, INC., a Washington
Corporation,

    Plaintiff,

v.

U.S. CORRUGATED, INC., a Georgia
corporation (individually and as a
successor to U.S.C. Acquisition Corp.),

    Defendant.

CASE NO. C08-5229BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION TO
DISMISS FOR LACK OF
PERSONAL JURISDICTION
OR, ALTERNATIVELY, TO
TRANSFER VENUE

This matter comes before the Court on Defendant U.S. Corrugated, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue. Dkt. 8. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On April 17, 2008, Plaintiff Longview Fibre Paper and Packaging, Inc., filed a complaint alleging Defendant U.S. Corrugated, Inc., as a successor to U.S.C. Acquisition Corp., breached an Asset Purchase Agreement. Dkt. 1 ("Complaint"). Plaintiff seeks

ORDER - 1

1  relief for breach of contract, declaratory judgment pursuant to 28 U.S.C. § 2201, and
2  specific performance. *Id*.

3  On May 9, 2008, Defendant filed a Motion to Dismiss for Lack of Personal
4  Jurisdiction or, Alternatively, to Transfer Venue. Dkt. 8. Defendant requests that the
5  Court transfer venue to the United States District Court for the Northern District of Iowa,
6  Cedar Rapids Division ("Iowa District Court"). On July 7, 2008, Plaintiff responded.
7  Dkt. 12. On July 11, 2008, Defendant replied. Dkt. 16.

## II. FACTS

### A. The Parties

Plaintiff claims that it "is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in Longview, Washington." Complaint, ¶ 1. Plaintiff claims that Defendant "is a Georgia corporation, with its principal place of business in Georgia." Defendant claims that it neither has offices, property, or employees in the State of Washington nor is authorized to transact business in this State. Dkt. 9, Declaration of Dennis Mehiel ("Mehiel Decl."), ¶¶ 4-6.

### B. The Sale

In 2006, Plaintiff "made the business decision to sell the eight converting plants comprising its central and eastern divisions (the 'Facilities')." Dkt. 14, Declaration of Elizabeth Oliver ("Oliver Decl."), ¶ 9. "The Facilities were located in states east of the Mississippi River." *Id*.

Plaintiff solicited purchase offers from potential buyers. *Id*., ¶ 12. In response, Plaintiff claims that, in August of 2006, it received a Confidentiality Agreement from Four M Investments, LLC, and signed by Dennis Mehiel. *Id*., Exh. A. Specifically, the agreement provides as follows:

> consent to submit to the exclusive jurisdiction of the courts of the State of Washington and of the United States of America located in the State of Washington for any actions, suits or proceedings arising out of or relating to this agreement and the transactions contemplated hereby . . . .You hereby irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of this agreement or the

ORDER - 2

> transactions contemplated hereby, in the courts of the State of Washington or the United States of America located in the State of Washington and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

*Id*. at 4-5.

In October of 2006, Dennis Mehiel sent a "preliminary non-binding indication of interest" to Plaintiff. *Id*., Exh. B ("Letter of Interest") at 2. In that letter, Mr. Mehiel represented that he was the managing partner of Four M Holdings LLC. *Id*. Defendant claims that Four M Investments and Four M Holdings are separate legal entities. Dkt. 16 at 2-3.

It is undisputed that, in November of 2006, two or three Deloitte & Touche employees traveled to Longview, Washington to preform due diligence of Plaintiff's financial records and other data. Oliver Decl., ¶ 21. Defendant claims that these were outside accountants and were not Defendant's employees. Mehiel Decl., ¶¶ 12-13.

On January 26, 2007, Defendant tendered a written offer for the purchase of the facilities. Oliver Decl., Exh. C. In that letter, Mr. Mehiel stated that "Four M Investments, LLC ("Four M") is an investment vehicle in which I hold the principal member interest and of which I am the Managing Member." *Id*. at 1. Further, "On 31 August 2006, Four M [Investments] acquired LINPAC. Inc, an integrated system based in the South East . . . . This business, now renamed U.S. Corrugated, Inc., is the platform I intend using for further acquisitions in the sector such as [Plaintiff]." *Id*. Plaintiff did not accept the terms of that offer, but the parties continued to negotiate.

In mid-March of 2007, Plaintiff and U.S.C. Acquisition Corp. entered into an Asset Purchase Agreement. Oliver Decl., Exh. D. The agreement reflected the parties' agreement that in consideration for Plaintiff's sale of the Facilities to Buyer, Buyer would, among other things, (a) offer employment to Plaintiff's employees working at the Facilities when the sale closed, (b) assume the collective bargaining agreements applicable to those employees, (c) provide employee benefits to those employees "not less

ORDER - 3

favorable than the employee benefits provided by Buyer to similarly situated employees of Buyer or, if greater, those required by any Labor Agreement," and (d) "indemnify, defend and hold harmless" Plaintiff from specified losses. *Id*. §§ 7.3,7.4,8.1 and 8.4. The agreement also provided that it would be governed by Washington law, and it expressly incorporated the Confidentiality Agreement, stating: "This Agreement, and the Schedules and the Exhibits and the Confidentiality Agreement, which are expressly incorporated herein, supersede any other agreement, whether written or oral, that may have been made or entered into by Seller or Buyer." *Id*. §§ 10.6 and 10.8. Mr. Mehiel singed the agreement on behalf of U.S.C. Acquisition Corp. *Id*. at 61.

**C.     The Collective Bargaining Agreement**

In 2005, Plaintiff acquired a corrugated container facility in Cedar Rapids, Iowa ("Cedar Rapids Facility"). Complaint, ¶ 9. In that purchase, Plaintiff assumed a collective bargaining agreement between the previous owner of the plant and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and Cedar Rapids Local No. 11-436 (collectively "Union"). Oliver Decl., ¶¶ 6, 42; *see also id*. Exh. H ("Collective Bargaining Agreement").

The Collective Bargaining Agreement specified the terms and conditions under which the Union employees worked at the Cedar Rapids Facility. For example, Section E of the agreement covered wages, Section H addressed Group Health benefits, and Section S dealt with pension benefits. *See* Collective Bargaining Agreement. Under Section S, which referred to the "Employees' Retirement Plan of Longview Fibre Company" (the "Plan"), the parties agreed that the employees subject to the Collective Bargaining Agreement were covered by the Plan, as in effect on May 1, 2005, but that the Union employees would receive certain bargained-for benefits that differed from those provided by the Plan. Those bargained-for benefits were to remain in effect until April 30, 2009, the expiration date of the agreement.

# III. DISCUSSION

## A. Venue in Washington

28 U.S.C. § 1391 provides as follows:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, . . .
>
> ***
>
> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

In the complaint, Plaintiff claims that "[v]enue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(l ) or (2), because [Defendant] is subject to personal jurisdiction here and because a substantial part of the events or omissions giving rise to the claim occurred here." Complaint, ¶ 5. Even if this Court had personal jurisdiction over Defendant, the Court finds that the Western District of Washington is not the appropriate venue for this action.

## B. Transfer of Venue

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). When considering a motion to transfer venue under § 1404(a), the court should weigh multiple factors in its determination whether transfer is appropriate. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000). The court may consider (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel

attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Id*. at 498-99. Defendant requests that this action be transferred to the Iowa District Court. Dkt. 8 at 1.

Plaintiff argues that Defendant's request to transfer venue "is made in flagrant disregard of [its] contractual promise." Dkt. 12 at 19. Defendant counters that the contractual promise not to transfer venue was made by Four M Investments and not Four M Holdings. Dkt. 16 at 2. Defendant claims that Four M Investments and Four M Holdings are separate legal entities and that Four M Holdings is the legal entity with an ownership interest in Defendant. *Id*. at 2-3. The record does not show that Defendant is bound by the contractual promise that Plaintiff has identified. Therefore, for purposes of this motion, the Court will not consider Defendant to be bound by that contract.

As for the nine factors relevant to transfer of venue, the first three weigh against transfer. Although the relevant agreement was negotiated by representatives from across the nation, it is undisputed that the agreement was executed in Washington. *See* Dkt. 12 at 20; Dkt. 16 at 8. This Court is likely most familiar with Washington law, which governs the agreement. Moreover, Plaintiff filed the action in this district and, therefore, it is the Plaintiff's preferred choice of forum.

The fourth and fifth factors are neutral as to Defendant's motion to transfer. Although Plaintiff has significant contacts with this state, Defendant has minimal, isolated contacts with Washington. Defendant's minimal contacts, however, do relate to Plaintiff's causes of action for breach of contract, declaratory judgment, and specific performance.

The sixth factor, the differences in the cost of litigation in the two forums, weighs in favor of transfer. It is undisputed that both parties are already defending the Union's lawsuit in Iowa. *See United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union v. U.S. Corrugated, Inc.*, No. 08-cv-0019 (N.D. Iowa). In fact, Plaintiff's counsel in this action who submitted its

opposition to Defendant's motion, Jill D. Bowman, is listed as a lead attorney in that Iowa action. *See id.* Moreover, Defendant argues that "having the same Iowa District Court address the straightforward contract issue raised [in this action] will not result in significant additional expense, and will likely result in lower overall cost both to the parties and the federal judiciary than would litigation in two different districts." Dkt. 16 at 10. The Court agrees. Therefore, this factor weighs in favor of granting Defendant's motion to transfer.

The seventh factor is the availability of compulsory process to compel attendance of unwilling non-party witnesses. Defendant claims that "[a]ll or most non-party witnesses are residents of Iowa, and neither party to this lawsuit can use compulsory process to compel" their attendance in Washington. Dkt. 8 at 11. Plaintiff argues in conclusory fashion that its witnesses are in Washington. This factor, however, weighs in favor of transfer.

The eighth factor is the ease of access to sources of proof. Defendant argues that "access to other sources of proof regarding what [Defendant] has offered to its union employees at the Cedar River Box Plant is easier in Iowa." Dkt. 16 at 11. Defendant also argues that "this dispute is not about the meaning of the [contract between Plaintiff and Defendant" as "[t]he Complaint does not allege that the contract is ambiguous." Dkt. 8 at 11-12. Plaintiff claims that "its documents are primarily in Washington." Dkt. 12 at 21. This factor, however, weighs in favor of transfer.

Finally, the ninth factor, the relevant public policy of Washington, is hardly implicated in this action. Plaintiff claims that "Washington has a legitimate interest in protecting the legal rights of its residents." Dkt. 12 at 18. While that proposition may be true, Plaintiff fails to show how that relates to a convenient forum, especially regarding the facts of this case and the underlying Iowa action. This factor is neutral as to transfer.

In light of all the factors weighing for and against transfer, this Court finds that the balance weighs in favor of granting Defendant's motion to transfer.

## III. ORDER

Therefore, it is hereby

**ORDERED** that Defendant U.S. Corrugated's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue (Dkt. 8) is **GRANTED** as to transfer of venue and the remainder is **DENIED** as moot. This matter shall be **TRANSFERRED** to the United States District Court for the Northern District of Iowa, Cedar Rapids Division. This Court's Scheduling Order (Dkt. 19) is **VACATED**.

DATED this 18th day of August, 2008.

BENJAMIN H. SETTLE

United States District Judge